U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT
MAR 16 2009
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

SHELIA ANN GILBERT

versus

BROOKSHIRE GROCERY COMPANY

CIVIL ACTION NO. 07-1758
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court are two motions for summary judgment, one filed by the plaintiff, Shelia Ann Gilbert ("Gilbert") and one filed by the defendant, Brookshire Grocery Company ("Brookshire"). See Record Documents 20 and 21. For the reasons set forth below, Gilbert's motion for summary judgment is **DENIED** and Brookshire's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

Gilbert was employed by Brookshire as the full-time manager of the deli in one of its store locations in Shreveport, Louisiana. She worked for Brookshire in various store locations from May of 1998 until May 17, 2006, beginning her employment in the deli department and working her way up to deli manager.

On May 9, 2006, a Brookshire's customer complained to store manager, Kevin

Westbrook ("Westbrook"), that Gilbert had been rude to him.[1] On May 13, 2006, another customer complained to Westbrook that Gilbert was rude to him. Westbrook sent Gilbert home that day to "think about" her job. See Record Document 20, Deposition of Gilbert at 16. On May 17, a meeting was scheduled with Gilbert, Westbrook, Richard Meshell, the district deli supervisor, and Alecia Hill of human resources. At the meeting, Westbrook showed Gilbert two corrective action notices dated May 9 and May 13 and informed her that she was terminated for being rude to customers in violation of Brookshire's store policy.[2] Gilbert then filed this action against Brookshire, asserting that she was terminated because of her race.[3] Thereafter, both Gilbert and Brookshire filed motions for summary judgment.

---

[1] Westbrook had been her supervisor for sixteen months.

[2] When Gilbert was told of her termination, she left the meeting. After she left, the corrective action notices were signed by Westbrook, with a notation that Gilbert had refused to sign the notices. See Record Document 20, Gilbert Deposition, Exs. P3-4.

[3] Although Gilbert has attempted to insert a claim for gender discrimination into her lawsuit, her deposition testimony belies her current efforts. The following exchange occurred between Gilbert and defense counsel:

> Q: So, in other words, you are not complaining about any gender discrimination because you are female?
>
> A: No.

Record Document 20, Deposition of Gilbert at 10. Thus, any claim for gender discrimination Gilbert is attempting to assert is **DISMISSED.**

2

## II. ANALYSIS

A. **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co. Inc., 402 F.3d 536, 540 (5th Cir. 2005). "[T]he nonmovant cannot satisfy [his] burden with conclusory allegations, unsubstantiated

assertions, or only a scintilla of evidence." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004).

B.  **Race Discrimination.**

Gilbert alleges that Brookshire discriminated against her because of her race by discharging her. Title VII provides that "[i]t shall be an unlawful employment practice for an employer--(1) to . . . discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove employment discrimination through direct or circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Gilbert's claims are evaluated using the clear evidentiary framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this analysis, if Gilbert establishes a prima facie case of discrimination, the burden shifts to Brookshire to articulate a legitimate, non-discriminatory reason for terminating her. See id. at 802-03, 93 S. Ct. at 1825. If Brookshire meets its burden, Gilbert then bears the ultimate burden of proving that Brookshire's proffered reason is untrue and a mere pretext for the real discriminatory purpose. See id. Gilbert can establish pretext by "showing that [Brookshire's] proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves v. Sanderson Plumbing Prods.,

4

Inc., 530 U.S. 133, 143, 120 S. Ct. 2097 (2000)). At the summary judgment stage, the question is not whether Gilbert has proven pretext, but rather whether she has raised a genuine issue of fact with respect to pretext. See Hall v. Gillman Inc., 81 F.3d 35, 37 (5th Cir. 1996).

### 1. Prima Facie Case.

Gilbert must first establish a prima facie case of race discrimination under Title VII by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25. Gilbert can establish a prima facie case by providing evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) others similarly situated, but not in her protected class, were treated more favorably. See id.; Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). Gilbert is a black female who was the manager of the deli department of Brookshire who was terminated. Thus, she is a member of a protected class who was subject to an adverse employment action, and the court will presume that she was qualified for her position. However, Gilbert cannot meet the fourth element of her prima facie case.

Gilbert has failed to present evidence that similarly situated non-black employees were rude to customers and were not terminated for their actions. In her affidavit, Gilbert stated that "Bryan Boswell, a white male employee was not fired

when a customer complained when he was not friendly." Record Document 21, Affidavit of Gilbert at 1. However, during her deposition, Gilbert was asked more about the incident involving Boswell and when Gilbert was asked whether Boswell was a deli employee, she answered: "He was a day stocker, or something like that." Record Document 20, Deposition of Gilbert at 56. In addition, during her deposition, Gilbert was asked the following question:

> Q: Do you have any facts or instances that you know of where other department managers like deli manager were rude to customers and they didn't get terminated? Do you know of any other scenarios like that that happened over the years?

Record Document 20, Deposition of Gilbert at 29. Gilbert answered, "No." Id.

Gilbert complains of actions by other employees in the store, in addition to Boswell, and that the actions of these employees did not result in termination. However, these employees, by Gilbert's own testimony, were not "similarly situated" to Gilbert. In addition to Boswell, Gilbert refers to Frank Miller ("Miller"), contending that he was a member of management who was not terminated for violating company policy. See Record Document 20, Deposition of Gilbert at 56-57. However, Gilbert admitted that Miller's conduct did not involve being rude to a customer. See id. Gilbert also listed others who work for Brookshire who were not terminated for violating company policy. However, none of the incidents (except for

Boswell) involved the person being rude to a customer. Few of the incidents involved someone in a management position but the occasions that did were not based upon rudeness to a customer. See Record Document 20, Deposition of Gilbert at 56-61.

The case law is well-settled that to succeed under a theory of disparate treatment, Gilbert must prove that her circumstances were "nearly identical" to the circumstances of those about whom she complains. See Berquist v. Washington Mut. Bank, 500 F.3d 344, 353 (5th Cir. 2007). In Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004), the Fifth Circuit clearly stated:

> We, however, have specifically addressed the plaintiff-employee's burden of proof in disparate treatment cases involving separate incidents of misconduct and have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been "nearly identical."

Id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991) and Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam)). The Perez court also detailed the case of Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296 (5th Cir. 2000), wherein the plaintiff argued that his employer terminated him for rude and abusive conduct but did not terminate a younger employee for such behavior. In Wyvill, the court found that "the striking differences between the two men's situations more than accounted for the differential treatment they had received." Perez, 395 F.3d at 213 (citing Wyvill, 212 F.3d at 305). Neither Gilbert's affidavit nor any of the

documents attached to her summary judgment raise a genuine question as to whether Gilbert and any other person about whom she complains performed nearly identical jobs. See Shackelford, 190 F.3d at 405-06 (holding that similarly situated means employees with the same position, qualifications, and pay rate). Gilbert has not produced sufficient summary judgment evidence to show that she and any other employee about whom she complains are similarly situated. As Gilbert has not established a prima facie case, her claim must fail. The court will, nonetheless, analyze Gilbert's claim as if she established a prima facie case.

2. **Legitimate, Non-Discriminatory Reason.**

Even had Gilbert established a prima facie case, her claim would still fail. The existence of a prima facie case would cause a presumption of discrimination to arise. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt v. City of Houston, Texas, 247 F.3d 601, 606 (5th Cir. 2001). As a result, the burden would shift to Brookshire, who must then articulate a legitimate non-discriminatory reason for Gilbert's termination. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt, 247 F.3d at 606. The burden of production is satisfied "regardless of the persuasive effect of the proffered reason." Polanco v. City of Austin, Tx., 78 F.3d 968, 976 (5th Cir. 1996) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-17, 113 S. Ct. 2742 (1993)). If Brookshire can make such a showing, the burden shifts

back to Gilbert to demonstrate that the articulated reason was pretextual. See McDonnell Douglas, 411 U.S. at 802-804, 93 S. Ct. at 1824-25; Pratt, 247 F.3d at 606. Gilbert may prove pretext by "either directly ... persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

Brookshire contends that Gilbert was terminated for twice within one week being rude to customers in violation of Brookshire's company policy. In support of its motion for summary judgment, Brookshire submitted its "Partner Handbook," which is provided to each new Brookshire employee. See Record Document 20, Deposition of Gilbert, Ex. P-12. Page one of the handbook contains the "Company pledge" which states:

> Brookshire's . . . stores are places where the care and satisfaction of our customers is our highest mission. We pledge to provide the finest personal service and products for our customers, who will always enjoy a warm, relaxed shopping atmosphere in clean stores. . . .

Id. at 1. In welcoming a new employee, the first sentence of the first page of the handbook provides that the new employee has "become a partner on an aggressive, people-oriented team that realizes success hinges upon our ability to put the needs of people first." Id. In addition, page three of the handbook is devoted to a section

entitled "Legendary customer service." Id. at 3. This page details things such as customer awareness, learning names and answering questions. See id. The section specifically discusses "[c]ourteous, friendly service," stating:

> Our company has the reputation of having the friendliest and most courteous group of employees in any food stores. We know this is one of the primary reasons we have been successful. Our people make shopping a pleasure for all customers. As a partner, always strive to find new ways to make customers feel welcome when they shop.

Id. In the margin of this page, the handbook further provides that "[b]eing rude or disrespectful to a customer can result in disciplinary action up to and including termination." Id. Gilbert signed page thirty-one of the handbook, indicating that she had been provided a copy of the handbook and had read it. See Record Document 20, Deposition of Gilbert at 27.

Also included in the evidence presented by Brookshire are two corrective action notices that reference the following: (1) a customer complaint on May 13, 2006, wherein the customer stated that Gilbert was "rude to him and very unhelpful"; and (2) a complaint by customer Cleve Taylor that Gilbert became upset when she was told by him that the order she retrieved for him was wrong, and "instead of handing the item back to him, [Gilbert] flung the order at him." Record Document 20, Deposition of Gilbert at P-4. These were the two corrective action notices that were shown to Gilbert at the meeting held to discuss her termination. Both corrective action notices stated the

following:

**Partners [sic] plan of action:**

    Being rude to a customer is against company policy and grounds for termination.

Record Document 20, Deposition of Gilbert, Exs. P-3 & P-4.

### 3. Pretext.

The foregoing evidence proffered by Brookshire satisfies its burden of providing a legitimate, non-discriminatory reason for terminating Gilbert. Accordingly, the presumption of unlawful discrimination disappears, and the burden shifts back to Gilbert to prove that the proffered reason is a pretext for discrimination. The ultimate determination in the summary judgment context is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. See Crawford v. Formosa Plastics Corp., 234 F.3d 899 (5th Cir. 2000); Reeves, 530 U.S. at 142-43, 120 S. Ct. at 2106. In making this determination, a court should consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. . . ." Crawford, 234 F.3d at 902 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. at 2109). The Fifth Circuit Court of Appeals has recognized the difficulty in proving discrimination by direct evidence. See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996). Thus, the strength of the circumstantial evidence

supporting the plaintiff's prima facie case and showing the defendant's proffered reason is false may be enough to create an inference of discrimination. See Crawford, 234 F.3d at 902; Reeves, 530 U.S. at 148, 120 S. Ct. at 2109.

A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. See Crawford, 234 F.3d at 902; Wyvill, 212 F.3d at 301. The plaintiff must present "sufficient evidence to find that the employer's asserted justification is false." Crawford, 234 F.3d at 903 (quoting Reeves, 530 U.S. at 148, 120 S. Ct. at 2109). The determination is to be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination. See id.

Gilbert has failed to present sufficient evidence of pretext to support a reasonable inference of discrimination on the basis of race in this case, and has failed to demonstrate a genuine issue of material fact as to whether Brookshire's employment action was illegally motivated. First, Gilbert contends that the summary judgment evidence as to whether she was rude is contradictory. Gilbert admits that she recalls an encounter with a customer but she claims that the customer was rude to her and that the customer's wife apologized for the customer's behavior. Regardless of Gilbert's explanation or recall of how the events transpired, the fact remains that a customer reported to management that Gilbert was rude to him. Gilbert has offered no evidence

that Westbrook did not believe the customers' accounts of what happened on May 9 and May 13. Instead, Gilbert simply disputes the circumstances, citing her own deposition testimony and the fact that the corrective action notices were both dated on May 17, 2006, the date of her termination.[4] However, none of these arguments address whether Westbrook believed the customers' versions of what occurred on May 9 and May 13.

Gilbert next argues that Brookshire did not follow its own policies and procedures in terminating her. She contends that "the procedure followed in notifying her of the violations did not follow the process ordinarily used for disciplinary procedures." Record Document 30. She further asserts that "[s]he was not told of the violations at the time each occurred; nor given counseling; and she did not receive concurrent written notices of the violations." Id. In his deposition, Westbrook testified

---

[4] Gilbert attempts to make much of the fact that the corrective action notices were, evidently, not filled out contemporaneously with the incidents. Gilbert accurately points out that the notice describing the incident of May 9, 2006, is marked "Second Notice." Record Document 20, Deposition of Gilbert, Ex. P-4. The notice describing the incident of May 13, 2006, is marked "First Notice." See id., Ex. P-3. Both documents are dated May 17, 2006, the date Gilbert was terminated. See id. These inconsistencies lead Gilbert to conclude that "both documents were drafted in an effort to build a record 'after the fact.'" Record Document 21. However, Brookshire's policy manual regarding corrective action notices clearly provides that "[s]ome cases may involve serious misconduct that may warrant immediate dismissal after investigation -- for example, dishonesty, harassment, *customer service*, safety, or substance abuse." Record Document 21, Ex. C (emphasis added). Regarding the timing of the corrective action notice, the policy manual provides that corrective actions should "take place by the end of the next business day that the partner works from the specific incident, *if possible.*" Id. (emphasis added). Thus, Gilbert's attempt to show pretext through the incorrectly dated corrective action notices is insufficient.

13

that he investigates, counsels and fills out a corrective action notice when conduct needs to be addressed by management. See Record Document 21, Ex. B at 23-24 & 28. While it is true that Gilbert was not "counseled" by Westbrook prior to her termination, there is no evidence that any other employee of Brookshire was the subject of customer complaints twice within seven days. Thus, Brookshire's decision to terminate Gilbert in light of the facts does not raise an inference of discrimination. Additionally, there is no summary judgment evidence of any racial animus on the part of Brookshire or any of its employees or that race placed any part in the decision to terminate Gilbert.

The evidence before the court does indicate Brookshire's history of varying responses to violations of different store policies. However, Gilbert has not convinced the court that such variances would compel a rational fact finder to deem Brookshire's proffered reason to be pretextual. See St. Mary's Honor Ctr., 509 U.S. at 511, 113 S. Ct. 2742. Specifically, Gilbert has not provided the court with any evidence that race discrimination was more likely the motivation for Brookshire's employment decision than the customer complaints of her rudeness. At best, Gilbert has illustrated inconsistencies in Brookshire's discipline procedures. She has presented no evidence that these inconsistencies are a product of discrimination. Neither has Gilbert caused the court to question the credence of terminating an employee who is the manager of a department for unacceptable customer service by being rude to customers. An

employee in a managerial capacity necessarily sets an example for the other employees in her department for what can be considered acceptable and unacceptable behavior. Brookshire clearly placed customer service high on its lists of priorities when detailing job requirements in its handbook.

Gilbert's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). Gilbert has offered no proof that anything other than a perception by management of unsatisfactory job performance motivated her termination. She has brought forth nothing but conclusory allegations to show that her termination was based upon any reason other than the ones articulated by Brookshire. Her allegations are clearly insufficient to defeat Brookshire's motion for summary judgment. See Bynam v. FMC Corp., 770 F.2d 556, 576 (5th Cir. 1985); Richardson v. Oldham, 12 F.3d 1373, 1378 (5th Cir. 1994) (holding that "[m]ere conclusory allegations are not competent summary judgment evidence . . . ."). Gilbert has failed to put forth evidence that demonstrates Brookshire's reasons were false or were a pretext for discrimination. In order to survive summary judgment, Gilbert must demonstrate that Brookshire acted with discriminatory intent. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (1995). This she has not done. Title VII does not protect an employee against unfair employment decisions. Instead, it protects against

employment decisions based upon discriminatory animus. See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997). Brookshire's management concluded that Gilbert's conduct was not consistent with company policies. Brookshire can make an employment decision that may be perceived by some as incorrect, but if that decision is based upon a good faith belief with no discriminatory influences, as happened with the decision to terminate Gilbert, then the court will not question the validity of the reasons. See Mayberry, 55 F.3d at 1091. The complaints made by customers were the source of this employment action, and Gilbert has provided no evidence that the decision to terminate her was motivated by race. Thus, her claims must be dismissed.

### III. CONCLUSION

Viewing all of the summary judgment evidence in a light most favorable to Gilbert, the court finds that no reasonable factfinder could infer race discrimination from the evidence set forth in this case. Accordingly, Gilbert's motion for summary judgment is **DENIED** and Brookshire's motion for summary judgment is **GRANTED**. All of Gilbert's claims against Brookshire are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 16th day of March, 2009.

JUDGE TOM STAGG